IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | 4:09CR3091 |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JAKTINE ALPHONSO MOORE, | ) | |
| | ) | |
| Defendant. | ) | |

Jaktine Alphonso Moore ("Moore") has filed a Motion to Vacate under 28 U.S.C. § 2255. After initial review[1], I deny the motion and dismiss it with prejudice.

## I. BACKGROUND

Moore, a 37-year old black[2] man, was charged, together with his sister Jobita Avery ("Avery"), with engaging in a relatively large family business in Lincoln, Nebraska, that distributed crack cocaine produced by "cooking" powder cocaine. On February 1, 2010, a jury convicted Moore and Avery and determined that they were each responsible for 50 grams or more of crack and 500 grams or more of cocaine. (Filing no. 143.) After the government presented its evidence at trial, there was no

---

[1]Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

[2]Moore's race is relevant to his first claim.

doubt that Moore was deep into the drug business. At sentencing, Moore admitted that "I – I sold drugs. I'm not -- I'm not going to even deny it, Judge Kopf." (Filing no. 236 at CM/ECF p. 107.)

Because the government proved beyond a reasonable doubt that Moore had two previous drug convictions (e.g., filing no. 236 (sentencing transcript)), I imposed the statutory minimum sentence of life in prison. (Filing no. 226.) *See* 21 U.S.C. § 851(a)(1) and 21 U.S.C. § 841(b)(1)(A). Absent the statutory minimum, Moore, with a total offense level of 40 and a criminal history category of VI, faced a Guideline range of 360 months to life in prison. (Filing no. 227.)

During the pretrial proceedings and at trial Moore was represented by Nancy Peterson. Following the jury verdict, but prior to sentencing, a hearing established that Moore refused to deal constructively with Peterson and I allowed her to withdraw. (Filing no. 174[3]; filing no. 175.) After that, I appointed Mark Weber to represent Moore at sentencing and thereafter on appeal.[4]

---

[3]At the hearing, I asked Peterson to recite into the record her experience. Educated at the University of Nebraska College of Law, Peterson served 10 years as a public defender in Atlanta, Georgia, handling all types of matters including death penalty cases. When she returned to Lincoln, Nebraska, she joined the Nebraska Commission on Public Advocacy, a state agency. For eight years she handled serious and violent felonies throughout the State of Nebraska when competent local counsel could not be found to take unusually difficult cases. After that, she opened her private practice and represented criminal defendants in all courts. Peterson has always provided her clients with excellent representation when she appeared before me. This case is no exception.

[4]Like Peterson, Weber is both extremely experienced and very skillful. Indeed, for the past 20 years, Weber has appeared before me numerous times in criminal cases and he consistently provided high quality representation. Again, this case was no exception.

With Weber's help, Moore perfected an appeal, raising three arguments. He argued that the evidence was insufficient to support the conviction. He argued that I had improperly counted his prior drug convictions as two convictions instead of one for the purposes of the enhancement statute. He also argued that the provisions of 21 U.S.C. § 851(e)–which precluded him from challenging the validity of his prior convictions–was unconstitutional. On March 20, 2011, in an unpublished opinion, Moore's appeal was denied and his conviction and sentence were affirmed. Judgment was entered at the same time. Moore did not seek further review.

On May 3, 2012, Moore file his timely[5] motion under 28 U.S.C. § 2255. (Filing no. 265.) He raised six arguments.

Summarized and condensed, Moore's arguments are: (1) because black people were excluded, the grand jury and the trial jury were not chosen form a fair cross-section of the community; (2) a juror failed to disclose evidence of a potential bias during voir dire and prior to deliberations; (3) Moore was prejudiced by the variance between the indictment and the government's proof of multiple conspiracies; (4) the government presented seven witnesses who were housed at the same detention facility and those witnesses colluded against Moore; (5) Moore had inadequate and untimely notice of the penalty enhancement regarding prior drug convictions; and (6) for numerous reasons, his lawyers were ineffective.

---

[5]Where, as here, there is an unsuccessful appeal, but no petition for certiorari is filed, the statute of limitations for § 2255 motions begins to run 90 days after the Court of Appeals judgment is entered. *Clay v. United States*, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari . . . on direct review, § 2255's one-year statute of limitations period starts to run when the time for seeking such review expires."); Sup. Ct. R. 13.1 (stating that a petition for certiorari must be filed within 90 days after the judgment (and not the mandate) is entered). *See also United States v. Martin*, 408 F.3d 1089, 1090 (8th Cir. 2005) (concluding that where Court of Appeals opinion was dated December 12, 2001, and no petition for certiorari was submitted, one-year period for filing a § 2255 motion began to run on March 12, 2002).

## II. ANALYSIS

I will consider each of Moore's six arguments separately. That said, and in general, it plainly appears from the motion, the attached exhibits, and the record of prior proceedings that Moore is not entitled to relief.

### *Claim One*

Moore's argument[6] that the grand jury and the trial jury were not composed of a fair cross-section of the community must be denied for a variety of reasons. Initially, to the degree that Moore bases his challenge on the Jury Selection and Service Act, 28 U.S.C. §§ 1861-1869, the claim fails because Moore failed to object prior to the time required by the Act. *See* 28 U.S.C. § 1867 (a), (e) (providing the exclusive means for challenges under the Act and requiring that challenges to both grand and petit juries be lodged prior to voir dire, or within seven days of when the challenge could have been discovered, whichever is earlier). Additionally, if Moore asserts a constitutional claim, that claim also fails because he has provided nothing to suggest that blacks were *systematically* excluded.[7] *See*, *e.g.*, *United States v.*

---

[6]Moore's claim one is apparently based on this logic: (1) Moore is black; (2) there were no blacks on the panel summoned for his trial; and (3) he speculates that no blacks were on the grand jury. For the sake of argument, I assume the foregoing to be true.

[7]Our previous jury selection plan has survived "fair-cross-section" attacks in the past. *See*, *e.g.*, *United States v. Sanchez*, 156 F.3d 875, 879 (8th Cir. 1998) (absent proof that certain racial or ethnic groups faced obstacles in voter registration process, statistics showing that African-Americans, Hispanics, Asian-Americans, and Native Americans were less represented on jury wheels than in the general population were not sufficient to establish violation of Sixth Amendment's fair-cross-section requirement based on district court's method of jury selection, under which potential jurors in the district were drawn exclusively from voter registration lists of each of Nebraska's ninety-three counties).

*Rodriguez*, 581 F.3d 775, 790 (8th Cir. 2009) (applying *Duren v. Missouri*, 439 U.S. 357 (1979), and holding that the defendant failed to establish that African-Americans and Hispanics were systematically excluded from jury pools in the District of North Dakota). Finally, this claim could have been asserted on direct appeal, and it is, therefore, defaulted because it was not raised on direct appeal. *See*, *e.g.*, *Peltier v. United States*, 867 F.2d 1125, 1126 (8th Cir. 1989) (concluding that because the claim was not raised on direct appeal, the defendant waived for review his § 2255 claim that Native Americans constituted the largest racial minority in the district but members of this group were rarely summoned).[8]

*Claim Two*

Moore argues that a juror, Barbara Euler ("Euler"), failed to disclose during voir dire or otherwise that she was potentially biased against Moore due to the fact that her husband had rented property to the defendant's cousin during the period of the conspiracy. Moore supports his argument with an affidavit from his cousin, Aurora Moore, dated January 28, 2012. (Filing no. 266 at CM/ECF pp. 36-37.) This claim must be denied for several reasons.

---

Our amended Plan for Random Jury Selection was approved by the Eighth Circuit Judicial Council on March 3, 2010. It provides that all persons who are registered to vote, who hold driver's licenses or who have state-issued identification cards are potential grand and petit jurors. *See Plan for Random Jury Selection for the District of Nebraska,* § 5, http://www.ned.uscourts.gov/internetDocs/jury/NebrJuryPlan.pdf.

[8]Like Peltier, Moore tries to avoid the waiver problem by attacking his counsel. But like the Court of Appeals, I also reject this claim because "[t]here is no reason here to question the selective judgment of . . . appellate counsel, particularly since past discrimination claims against this District's jury selection plan have proved unsuccessful." *Id.*

-5-

Before I address Moore's second claim, it is helpful to more fully explore the record. That record establishes that Euler was the subject of voir dire where the prospective juror and each of the defendants had the opportunity to see each other. Neither of the defendants reported that they knew Euler. In a similar vein, none of the jurors, including Euler, provided a response to my question asking whether any of the jurors knew the defendants. (Filing no. 112 at 20:58 (digital audio).) Before that question was asked, counsel had introduced each of the defendants to the prospective jurors. The defendants remained seated during the introduction.

Following jury selection, a lunch recess was taken and everyone returned for opening statements. After opening statements, a break was then taken. After the break, the courtroom deputy reported, outside the presence of the jury, but in the presence of the defendants and their counsel, that Euler, a teacher at Mickle Middle School, believed she knew Avery from school. (Filing no. 162 at CM/ECF pp. 65-66.) More specifically, Euler believed Avery had a child that attended Mickle Middle School, but said that she never had a conference with Avery. (*Id*.)

Euler reported that during jury selection she did not get a close look at Avery but "when she came in this afternoon and saw the cane[9], she's pretty sure that it's the same person that she saw." (*Id*. at CM/ECF p. 66.) I then asked Avery's counsel whether he thought Euler was accurate. After consulting with his client, Avery's counsel stated: "According to my client, Judge, she doesn't think so . . . ." (*Id*.) He added, "My client does not have a student at Mickle Middle School." (*Id*. at CM/ECF p. 67.)

With the express agreement of counsel for Moore, counsel for Avery and the prosecutor, Mrs. Euler was informed that she would continue to serve because

---

[9]Due to an injury suffered in an auto accident, Ms. Avery was using a cane at the time of trial. When Avery was seated at counsel table the cane was generally not visible.

"Avery does not have a student at Mickle Middle School and that we, therefore, think there is no problem." (*Id.*)  Despite the fact that Euler had faithfully reported her concerns that she might know Avery, neither Moore nor Avery reported knowing Euler or having any dealings with her.

Returning now to Moore's argument, the affidavit from his cousin is replete with conclusions, speculations and assertions of fact that are not based upon personal knowledge.  Setting to one side those irrelevancies, the affidavit (with attached copy of a lease) may fairly be condensed and summarized as follows: (1) Aurora Moore, together with her children Jasmine and Jalonni, entered into a residential lease with Phil Euler in November 2008; (2) on a couple of occasions Aurora Moore had problems with her downstairs neighbor calling the landlord to complain about Aurora Moore's family using parking spots; (3) on one occasion, the neighbor took a photo of Avery's car, showed the photo to the landlord and Phil Euler came to the residence "to make" Jobita Avery move the car; (4) a "couple of days after my cousin's trial," Aurora Moore received a telephone call from Phil Euler and a discussion ensued where Phil Euler stated that he was aware that the defendants Avery and Moore had been convicted because his wife had been on the jury and he stated that "it was too bad"[10]; (5) Aurora Moore protested the innocence of the defendants and Phil Euler said something about Aurora Moore's children needing good role models, which upset Aurora Moore; (6) during the conversation, Phil Euler said he did not want any

---

[10]As the trial began, the jurors were instructed that they should speak to no one about this case (filing no. 116 at CM/ECF p. 5 (preliminary jury instructions)) and they were reminded of the preliminary jury instructions as the case concluded. (Filing no. 145 at CM/ECF p. 2.)  There is no reason to think that Euler violated these instructions by speaking to her husband about the defendants while she served as a juror.  Of course, after she was discharged as a juror she was free to speak with her husband or anyone else.  Thus, the fact that Phil Euler knew his wife had served on the Moore jury is not surprising because it is undisputed that his statement about his wife's jury service took place *after* the jury was discharged.

trouble with Aurora Moore's family and he suggested that Aurora Moore move out; and (7) the lease was subsequently terminated at the end of the lease period.

As I have indicated, the affidavit contains several allegations that lack foundation. The most prominent example is found in Aurora Moore's assertion that "I feel that [Avery] and [Moore] did not receive a fair trial due to the many occasions of coming in contact with both my landlords Phil and Barbara Euler." (Filing no. 266 at CM/ECF p. 34.) The allegation that Barbara Euler was a "landlord" is conclusively disproved by the attached lease that provides that only Phil Euler was the landlord. (*Id.* at CM/ECF p. 36-37) ("Owner Contact Information" and signature line). Even more fundamentally, nowhere in the affidavit is there any recitation of facts[11] establishing that Moore ever came into contact with Phil or Barbara Euler.[12]

With the foregoing in mind, I now apply the law to the record. Initially, the claim comes too late. The alleged conversation between Phil Euler and Aurora Moore took place a "couple of days" after the trial. Moore provides no explanation as to why, in the exercise of due diligence, he could not have discovered his cousin's information and presented it to me promptly via a motion for new trial or otherwise and then on direct appeal. If Aurora Moore has accurately recited when she allegedly had the conversation with Phil Euler, no sentencing had yet occurred and no

---

[11]That is, there is no information answering the basic "who, what, when, where and why" foundational prerequisites.

[12]Moore's cousin Jonair Moore, was convicted in a separate trial before Judge Urbom. (4:09CR3092; filing no. 75.) Jonair Moore was also named as a coconspirator with Jaktine Moore and Jobita Avery. (Filing no. 145 at CM/ECF p. 14 (Instruction No. 13 setting forth names of conspirators).) Jaktine Moore states that Jonair Moore was the brother of Aurora Moore. Without foundation, Jaktine Moore claims that Jonair Moore resided at Aurora Moore's residence. However, Aurora Moore makes no statement whatever about Jonair Moore living with her. In any event, there is no evidence that Jonair Moore ever came into contact with Phil Euler or Barbara Euler.

judgment had been entered when she spoke with Phil Euler, although the jury had returned its verdict. If Aurora Moore's affidavit is believed, she had a close familial relationship with Moore thus suggesting that Aurora Moore's information was neither hidden from Moore nor otherwise unavailable to him. Why Moore waited more than two years to bring this allegation to my attention is unanswered.

The Supreme Court has stated that "a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, (1982). Likewise, "a collateral attack should not be entertained if defendant failed, for no good reason, to use another available avenue of relief." *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir. 1987) (citing *Kaufman v. United States*, 394 U.S. 217 (1969), *overruled on other grounds by Stone v. Powell*, 428 U.S. 465 (1976)). "To the fullest extent possible, all arguments, even constitutional or jurisdictional ones . . . should be made at trial and on direct appeal." *United States v. Ward*, 55 F.3d 412, 413 (8th Cir. 1995). Because it plainly appears that Moore, exercising due diligence, could have brought this matter to my attention prior to the entry of judgment (or soon thereafter) and because it plainly appears that he could have presented the claim on direct appeal, Moore has defaulted this argument. Additionally, Moore has made no attempt to excuse the default with a showing of cause and prejudice.

Even if not defaulted, it plainly appears from the record that Moore's claim has no substantive merit. Moore asserts that Euler should have revealed her dealings, and that of her husband, with the Moore family during jury selection or, in any event, prior to deliberations. Our Court of Appeals has stated that in cases of alleged concealed juror bias, the defendant must prove three things about voir dire: (1) that the juror answered dishonestly, not just inaccurately; (2) that the juror was motivated by partiality; and (3) that the true facts, if known, would have supported striking the juror for cause. *United States v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998). I turn to those three factors next.

Initially, there is no evidence that Euler answered dishonestly when she, like the rest of the jurors, did not respond affirmatively when asked whether she knew the defendants. We absolutely know that Euler was responding honestly because shortly after trial begun she brought to the attention of the court and counsel her concern, which proved to be incorrect, that she may have seen Avery at the school where she taught.

Furthermore, there is no evidence that Euler was motivated by partiality. Again, Euler displayed an attitude of complete candor as evidenced by the fact that she raised the possibility that she might have previously seen Avery at school. Still further, there is nothing in Aurora Moore's affidavit that suggests that Euler was in any way personally biased against Moore (or Avery). Indeed, there is no competent evidence showing that Euler had *any* dealings with Moore or Avery prior to trial. If that were otherwise, surely Moore or Avery would have called their prior dealings with Euler to the attention of counsel and the court, particularly after Euler expressed her concern that she might have seen Avery at school. After all, the court held a hearing with the defendants present to address that matter. That fact that Moore and Avery remained silent after Euler spoke about possibly knowing Avery is proof positive that the defendants had no basis for believing that Euler knew them or was biased against them.

Additionally, none of the information now provided by Moore would have provided a basis for striking Euler for cause. "[T]o challenge for cause, a party must show actual partiality growing out of the nature and circumstances of [the] particular case." *Tucker*, 137 F.3d at 1029 (quoting *United States v. Bascope-Zurita, 68 F.3d 1057, 1063 (8th Cir. 1995)*). There is no showing of actual partiality on the part of Euler.

In short, the case law firmly establishes that Moore is not entitled to relief based upon his claim that Euler failed to disclose information relevant to her jury service. *See, e.g., United States v. White Bull, 646 F.3d 1082, 1095 (8th Cir. 2011)*

(denying appeal where, in a sexual assault case, juror approached court after jury selection with a concern that he had sexual contact with a male friend, and that he was not sure it was a sexual assault, but that he was uncertain as to whether he may have responded untruthfully to voir dire question when he said that he had not been a victim of sexual assault–there was nothing to suggest that juror's experience affected the juror's impartiality); *Von Kahl v. United States,* 242 F.3d 783, 790–91 (8th Cir. 2001) (denying § 2255 motion because the defendant failed to show that statements by juror during voir dire that he and prosecutor had grown up in the same small town, but that he had no business or social relationship with prosecutor and that he simply knew who prosecutor was, were dishonest, or were motivated by partiality even though a second juror had stated during an interview that juror in question had indicated a closer relationship with the prosecutor); *United States v. Kelton*, 518 F.2d 531, 533 (8th Cir. 1975) (denying § 2255 motion where juror failed to respond when the panel was asked on voir dire whether they knew the individuals on trial even though the juror recognized a person in the courtroom who, unknown to the juror, was the defendant's mother and even though that juror was acquainted with the defendant's family).

*Claim Three*

Moore asserts that he was prejudiced by a variance between the indictment and the government's evidence of multiple conspiracies and that his counsel was ineffective for failing to raise this issue at trial and on appeal. This claim may be quickly resolved.

I heard the evidence. I am not persuaded that there were two or more conspiracies proven. On the contrary, the evidence adduced a trial proved a relatively large overarching single conspiracy in the Lincoln, Nebraska, area involving the Moore family (i.e. Jaktine Moore, Jobita Avery, Jonair Moore ("Spade")) and their associates, and under which powder cocaine was cooked into crack and then distributed. (Filing no. 145 at CM/ECF p. 14 (Instruction No. 13 setting forth names

of conspirators); Filing no. 228 at CM/ECF pp. 5-9, ¶¶ 21-33 (presentence report summarizing evidence).) In determining whether a single conspiracy was proven by the evidence I have considered the totality of the circumstances, including the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred. Because there was no variance from the indictment through proof of multiple conspiracies, counsel could not have been ineffective for failing to pursue this issue. *See*, *e.g.*, *Kamerud v. United States*, 629 F.3d 790, 792 (8th Cir. 2011) (affirming denial of § 2255 motion and holding that evidence adduced at trial established overarching single conspiracy to sell methamphetamine from defendants' apartment building, rather than multiple conspiracies, and thus counsel was not ineffective for failing to argue that there was a variance between single conspiracy charged in superseding indictment and multiple conspiracies allegedly proved at trial).

*Claim Four*

Moore asserts that the government presented seven witnesses who were housed at the same detention facility and those witnesses colluded against Moore. However, this claim is nothing more than a rehash of the sufficiency of the evidence claim that was rejected on appeal.[13] Therefore, I will not reconsider it. *Sun Bear v. United*

_____

[13] The Court of Appeals stated the following when denying Moore's direct appeal:

> Moore argues that the government's case contained no direct or physical evidence and that the testifying witnesses were all "unreliable and interested" as they were "convicted felons who entered into plea agreements with the government and provided testimony in exchange for . . . downward departures." Appellant's Br. at 7–8. We see this as little more than an invitation to re-weigh the evidence, and we decline to do so. The jury was in a better position than are we to weigh the credibility of the witnesses who testified at Moore's trial. And we have "repeatedly

*States*, 644 F.3d 700, 702 (8th Cir. 2011) (en banc) ("With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal.").

Even if I did reconsider, the jury was fully apprised of Moore's claim that the cooperating witnesses should not be believed because they were housed together and otherwise.[14]   The jury weighed the evidence (including evidence that the government's witnesses were "jumping on" cases to help themselves[15]), and the jury concluded that Moore was guilty.  There is no reason to doubt the validity of the jury's evaluation of the credibility of the government's witnesses.

*Claim Five*

Moore claims that he had inadequate and untimely notice of the penalty enhancement regarding prior drug convictions and that enhancement resulted in his life sentence.  Moore's claim is conclusively rebutted by the record.

---

upheld jury verdicts based solely on the testimony of coconspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." *United States v. Bower*, 484 F.3d 1021, 1026 (8th Cir. 2007) (citing *United States v. Tabor*, 439 F.3d 826, 829 (8th Cir. 2006), *vacated on other grounds*, 552 U.S. 1136 (2008)).

*United States v. Moore*, 411 Fed. App'x 922, 923, 2011 WL 693261, at *1 (8th Cir. 2011).

[14]In addition to other cautionary instructions regarding witnesses, I instructed the jury to give "greater caution and care" to the testimony of the cooperating witnesses as compared with the testimony of ordinary witnesses.  (Filing no. 145 at CM/ECF p. 8 (Instruction No. 7).)

[15]For example, see filing no. 166 (transcript of defense witnesses Troy Hamilton and Jushan Malone).

Moore and counsel were apprised of the information charging the drug convictions immediately before the trial. (Filing no. 113 (digital audio).) He was told of the penalty. I specifically asked whether he understood the consequences, and he indicated he did. I inquired whether counsel was prepared to proceed and counsel said that she was prepared to proceed. The arraignment on the information took about ten minutes and it was thorough.

The information (filing no. 106) charging the drug convictions was filed three days before trial began, and, as I indicated on the record during the arraignment, I had been informed that defense counsel knew before then that the government was going to file the information. The information clearly and specifically identified the two Colorado convictions that the government was relying upon as the basis for the enhancement. The information was specific as to the prior convictions and it came as no surprise.

After the jury returned its verdict, and on April 8, 2010, I issued an order. Among other things, that order provided: (1) notwithstanding section 21 U.S.C. § 851(b), the government was to be prepared to prove the alleged convictions and the finality of the alleged convictions at sentencing; (2) a hearing would be held at sentencing to determine whether the alleged convictions in fact took place, whether they were final and other matters appropriate for consideration under 21 U.S.C. § 851; (3) at least 5 business days before sentencing, the defendant was to comply with the requirements of 21 U.S.C. § 851(b) and affirmatively state whether he affirmed or denied the allegations of the information; (4) any challenge to a prior conviction alleged in the information which was not made before sentence was imposed could not thereafter be raised to attack the sentence; (5) any written response of the defendant as permitted or required by 21 U.S.C. § 851(c) was to be filed at least 5 business days before sentencing; (6) the Clerk was to provide counsel of record and the defendant with a copy of the order. (Filing no. 172.)

On June 1, 2010, Weber filed a detailed denial of the information. (Filing no. 212.) That denial was supported by a detailed brief. (Filing no. 213.) On June 24, 2010, the government filed a response (filing no. 219) and an index of evidence. (Filing no. 220.) That index included the following attachments: (1) Arapahoe County District Court case # 93CR-001232 judges minutes dated 7/21/95; (2) Arapahoe County District Court case # 93CR-001232 judges minutes dated 03-31-94; (3) Arapahoe County District Court case # 93CR-001232 Judgment of Conviction, Sentence and Order to Sheriff; (4) Felony Complaint and Information Arapahoe County Court, Dist Ct. #93CR1232; (5) Arapahoe County District Court case # 93CR-001232, Amended Judgment of Conviction and Sentence dated 2/25/2000; (6) Adams County District Court case 93CR1155 judges minutes dated 04-08-94; (7) Adams County District Court case 93CR1155 Judgment of Conviction, Sentence and Order; and (8) Adams County District Court case 93CR1155 Affidavit in Support of Warrantless Detention. (Filing no. 220.)

On June 25, 2010, a long evidentiary hearing (about 2 hours and 30 minutes) was conducted. (Filing no. 222; filing no. 236.) At the conclusion of the evidentiary hearing, I ruled, among other things, that: (1) the statutory enhancement applied and Moore must be sentenced to life in prison[16]; (2) Moore qualified for the Career Offender designation[17]; (3) Moore's objection regarding drug quantity was overruled and (4) Moore's objection to the obstruction of justice enhancement was denied and that Moore in fact obstructed justice.[18] Moore was sentenced to life in prison.

_____

[16]In deciding this issue, I ruled that the government bore the burden of proving beyond a reasonable doubt any issue of fact regarding the enhancement for prior drug convictions and I held the government to that burden. (E.g., filing no. 236 at CM/ECF p. 6.)

[17]The defendant's criminal history category was VI with or without the career offender designation. (*Id*. at CM/ECF p. 55.)

[18]The obstructive conduct related to threatening a potential witness–the threat was partially observed by a police officer. (*Id*. at CM/ECF p. 66-68, 98.)

In short, Moore received adequate and timely notice of the enhancement and a full and fair opportunity to contest it.[19] *See, e.g.*, *United States v. Curiale,* 390 F.3d 1075, 1076 (8th Cir. 2004) (concluding an information complies with the notice requirements for sentence enhancement based on earlier conviction even if it contains an error in its contents as long as the information serves to convey the government's intent to seek an enhancement based on a particular earlier conviction); *United States v. Stallings*, 301 F.3d 919, 920 (8th Cir. 2002) (finding defendant received timely notice of government's intent to seek sentencing enhancement based upon defendant's prior convictions, pursuant to notice and procedural requirements of statute allowing such enhancement, in prosecution for conspiracy to possess with intent to distribute cocaine base, where government filed its notice a few days prior to the commencement of defendant's trial).

*Claim Six*

Moore argues that defense counsel was ineffective during trial, at sentencing and upon appeal. Therefore, the *Strickland* standard must be applied. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (announcing principles for evaluation of claims of ineffective assistance of counsel under the Sixth Amendment). In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel under *Strickland*, the claimant must establish two things. He or she must establish (1) that "'counsel's representation fell below an objective standard of reasonableness,'"[20] and (2) that "'there is a reasonable probability that, but for

---

[19]Because Moore received everything to which he was entitled, any assertion that his counsel were ineffective fails as well.

[20]A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Reed v. United States*, 106 F.3d 231, 236 (8th Cir. 1997). In other words, a judge should make "every effort" to "eliminate the distorting effects of hindsight" by examining the lawyer's performance from "counsel's perspective at the time" of the alleged error. *Strickland*, 466 U.S. at 689.

counsel's unprofessional errors, the result of the proceeding would have been different.'"[21] *Nguyen v. United States*, 114 F.3d 699, 703-04 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 688, 694.)

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs or the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

Quoting from Moore's motion, he asserts the following reasons for claiming his lawyers were ineffective:

(1) Nancy K. Peterson failed to: (i) assert or preserve right to speedy trial; (ii) determine the racial composition of the grand jury or object to the absence of African-American venire-persons or members in the jury pool; (iii) assert claim of knowing use of falsified testimony and witness collusion; (iv) no objection or request for curative instruction as to evidence of multiple conspiracies; (v) failed to explain to Moore the penalty he faced in proceeding to trial with the §851 Notice; (vi) make any challenge as to the sufficiency of the indictment.

_____

[21]A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), but it is more than a possibility. *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

(2) Mark Weber failed to: (i) investigate and determine validity of predicates used for §4Bl.l enhancement; (ii) argue improper "recency" upward departure; (iii) make adequate assessment of drug quantity; (iv) challenge the Information regarding §851 enhancement; (v) raise or preserve any of the above issues by direct appeal or post-judgment motion.

(Filing no. 265 at CM/ECF p. 11.)

I have previously explained why several of these alleged errors have no merit. As for the others, I have carefully considered them. Simply put, none of them have merit. The lawyers' representation of Moore did not fall below the applicable standard, and, even if one assumes that the representation was deficient, there is no showing of prejudice. No further discussion of this claim is warranted.

## III. CONCLUSION

Moore received a full and fair jury trial, careful attention at sentencing, and a thoughtful appeal. He was represented by extremely experienced and zealous lawyers who did an admirable job. No matter what, it was highly probable that Moore was facing a long time in prison. As was his right, he elected to go to trial hoping, I suppose, that the cooperating witnesses would not be believed. The jury came to a different conclusion. The resulting life sentence was required under the facts and the law. Moore has no legitimate argument for relief.

IT IS ORDERED that:

1.    The motion to proceed in forma pauperis (filing no. 267) is granted.

2.    The Motion to Vacate under 28 U.S.C. § 2255 (filing no. 265) is denied with prejudice.

3.      A separate judgment will be issued.


DATED this 1st day of June, 2012.


                              BY THE COURT:

                              *Richard G. Kopf*
                              Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.